# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

I. DALE and PEGGY LAMB, husband and wife; )
L. RENEE and DENNIS CAGE, husband and wife; )
G. DOUGLAS and LINDA LOWE, husband and wife, )
    S.D. LOWE, minor child of G. DOUGLAS LOWE, )
    by and through his natural father, G. DOUGLAS LOWE; )
GLADYS HARRIS, individually; )
LANNY and BARBARA CARTWRIGHT, husband and wife; )
SCOTT and JACQUIE HOBBS, husband and wife; )
STACEY and SAEN CLARK, husband and wife, C. CLARK )
    and K. CLARK, minor children of STACEY CLARK, )
    by and through their natural mother, SAEN CLARK; )
RANDY and ANGELIQUE LYNN, husband and wife; )
    R. LYNN and B. LYNN, minor children of RANDY LYNN, )
    by and through their natural mother, ANGELIQUE LYNN, )
    )
    Plaintiffs, )
v. ) Case No.
) CIV 06-032-JHP
DANIEL KUDER; STANDARD WASTE SYSTEMS, LTD; )
THE SCOTTS COMPANY; SCOTTS PRODUCTS CO.; )
SCOTTS PROFESSIONAL PRODUCTS CO.; )
THE SCOTTS MIRACLE-GRO COMPANY; )
)
    Defendants, )
and )
)
J.B. HUNT TRANSPORT SERVICES, INC.; and )
J.B. HUNT TRANSPORT, INC.; )
)
    Third Party Plaintiffs and Defendants, )
v. )
)
STANDARD WASTE SYSTEMS, LTD., )
)
    Third Party Defendant, )
and )
)
COMMERCE AND INDUSTRY INSURANCE COMPANY, )
)
    Intervenor. )

## ORDER and OPINION

Before the Court are Third Party Defendant Standard Waste Systems, Ltd.'s Motions to Dismiss Plaintiffs' Second Amended Complaint and the Third Party Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the Responses in opposition, and the Replies thereto. For reasons stated herein, Third Party Defendant's Motions are DENIED.

Also before the Court is Third Party Defendant's Motion to Expedite Hearing on this issue which, pursuant to this ruling, the Court finds is MOOT. Plaintiffs' Request for Shortened Time for Initial Disclosures, which was included in their Response to the instant Motion, is also MOOT for the purposes stated by Plaintiffs; however, to the extent that all parties have not made the necessary disclosures, they are hereby ordered to do so immediately, in accordance with this ruling.

## Background

On June 25, 2004, Plaintiffs were injured after being exposed to a toxic chemical while unloading bales of waste paper at the Georgia-Pacific paper mill in Muskogee, Oklahoma. Third Party Defendant Standard Waste supplied the paper, pursuant to its exclusive contract with Georgia-Pacific. Defendant Daniel Kuder, a driver for Third Party Plaintiff J.B. Hunt, a commercial trucking service, transported the load of paper in question from Standard Waste's Dallas, Texas facility directly to Georgia-Pacific's Muskogee location.

Plaintiffs originally filed suit on January 23, 2006 against J.B. Hunt, alleging that the toxic chemical was present in the truck due to its negligence. J.B. Hunt filed suit against Third Party Defendant Standard Waste, claiming that the chemical was present in the waste paper they

supplied to Georgia-Pacific. Plaintiffs then amended their suit to name Standard Waste as a Defendant as well. This case is currently before the Court on Standard Waste's Motion to Dismiss for Lack of Personal Jurisdiction.

## Discussion

The purpose of allowing a jurisdictional challenge such as the one raised here is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). Where, as here, the Court determines that an evidentiary hearing is not necessary, the plaintiff must only make a *prima facie* showing that jurisdiction is appropriate in order to overcome such challenge. Id. at 1091. The defendant must then present a compelling case that the exercise of jurisdiction would somehow be unreasonable. Id. At this early stage of litigation, the plaintiff's burden is light, and all doubts must be resolved in plaintiff's favor. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).

To establish personal jurisdiction over the defendant, the plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. Id. Because Oklahoma's long-arm statute permits any exercise of jurisdiction consistent with the U.S. Constitution, the personal jurisdiction inquiry conflates into a single due process inquiry. Id. Due process requires "only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316

(1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).

**I.  Minimum Contacts**

When examining a defendant's "minimum contacts," the Court must determine whether such contacts would support the exercise of general or specific jurisdiction, if at all.  In order to be subject to general jurisdiction, the defendant must have "continuous and systematic contacts" with the forum.  <u>Heliocopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 & n.9 (1984).  In order to be subject to specific jurisdiction, the defendant must purposefully direct its activities toward the forum, thereby giving rise to plaintiff's cause of action, so that the defendant may "reasonably anticipate being haled into court there," <u>World-Wide Volkswagon Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

General jurisdiction permits the Court to exercise jurisdiction over the defendant without regard to the subject matter of the suit.  <u>Soma Med. Int'l v. Standard Chartered Bank</u>, 196 F.3d 1292, 1295 (10th Cir. 1999).  In addition to the <u>Heliocopteros</u> standard of "continuous and systematic contacts" with the forum, the Tenth Circuit has further mandated that the defendant must be conducting "substantial and continuous local activity" with the forum in order to support general jurisdiction.  <u>Id.</u>  In making this determination, the Court may consider whether the defendant (1) engages in business in this state; (2) is licensed to do business in this state; (3) owns, leases, or controls any real or personal property or assets in this state; (4) has employees, offices, agents, or bank accounts in this state; (5) has shareholders resident in this state; (6) maintains telephone or fax listings within this state; (7) advertises or solicits business in this state; (8) travels to this state by way of salespersons, etc.; (9) pays taxes in this state; (10) visits potential customers in this state; (11) recruits employees in this state; or (12) generates a

substantial percentage of its national sales through revenue generated from customers in this state.  Id. at 1295-96; Smith v. Basin Park Hotel, Inc., 178 F. Supp. 2d 1225, 1231 (N.D. Okla. 2001).

Here, Standard Waste denies the presence of any and all of the Soma factors.  It is undisputed that Standard Waste is not licensed to do business in Oklahoma, does not own any property or have any "corporeal" business assets in Oklahoma, and does not pay taxes in Oklahoma.  Indeed, Third Party Plaintiff J.B. Hunt does not even argue that general jurisdiction would be appropriate in this case.  The Court must impose a stringent minimum contacts test to justify the exercise of general jurisdiction.  *See* OMI Holdings, Inc., 149 F.3d at 1090-91 (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).  Given the circumstances noted above, the Court finds this test has not been satisfied here, such that the exercise of general jurisdiction over Standard Waste would clearly offend "traditional notions of fair play and substantial justice."

Plaintiffs and Third Party Plaintiffs primarily argue that, based on Standard Waste's shipments of paper to Muskogee, Oklahoma at the approximate rate of 20-25 loads per month over the last 5-6 years, Standard Waste could reasonably expect to be haled into court here, such that specific jurisdiction would be appropriate.  The Court agrees that the scope and duration of Standard Waste's shipping activities makes the possibility of suit here "foreseeable," if not highly probable.  Of course, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  World-Wide Volkswagon, 444 U.S. at 295, 297.  The "constitutional touchstone" is instead purposeful availment, which precludes personal jurisdiction resulting from "random, fortuitous, or attenuated contacts."  *See* Bell Helicopter

Textron, Inc. v. HeliQwest Int'l, Ltd., 385 F.3d 1291, 1296 (10th Cir. 2004) (quoting Burger King Corp. v.Rudzewicz , 471 U.S. 462, 475 (1985)).

With regard to its purposeful availment of the forum state, Standard Waste states in pertinent part:

> [I]t is J.B. Hunt, and not Standard Waste, that transported the waste paper at issue to Oklahoma. . . . Even more, Standard Waste did not sell the waste paper to J.B. Hunt (which makes sense as J.B. Hunt is merely an interstate trucking carrier), but rather it sold the waste paper to Georgia Pacific. . . . Georgia Pacific is a large company with operations all over the United States. As far as Standard Waste knew, the waste paper could have gone anywhere in the country where Georgia Pacific has operations.

[Mtn. to Dismiss at 10-11.] These claims are disingenuous, at best. Plaintiffs and Third Party Plaintiffs note, however, that Georgia Pacific has exactly **two** operating plants – one in Wisconsin and one in Oklahoma. Thus, Standard Waste's product does not flow through the "stream of commerce" so much as plop down into one of two ponds. *See* Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 110 (1987) (noting that trial courts are often "confronted with cases in which the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum State").

In Asahi, the Supreme Court addressed whether a forum state may, consistent with the Due Process Clause, exercise personal jurisdiction over a nonresident defendant who places products into the stream of commerce. The Court split on just how involved the defendant must be to be subject to jurisdiction. The plurality led by Justice O'Connor found that foreseeability alone could not create jurisdiction, but instead, the defendant must in some way – through advertisement, marketing, design, or some similar conduct – purposefully direct its product toward the forum state. Id. at 112. In contrast, the plurality led by Justice Brennan found that

6

the defendant's knowledge that a product would arrive in the forum state via the regular stream of commerce was sufficient, because defendant would not be surprised to be haled into court in such a forum. Id. at 117.

Here, Standard Waste had concrete knowledge – **not** mere foreseeability – that its product was being shipped to Oklahoma. The address of the Georgia Pacific facility in Muskogee, Oklahoma was printed on the Freight Bill which accompanied the shipment in question. Standard Waste has made 20-25 such shipments every month for the last 5-6 years. Under these facts alone, Justice Brennan's standard is clearly satisfied.

The Tenth Circuit, however, appears to have adopted Justice O'Connor's standard. For example, in Bell Helicopter, the appellate court stated that "the mere foreseeability that a customer will unilaterally move a chattel into a given state does not create jurisdiction over the vendor of the chattel." 385 F.3d at 1297. Similarly, in Fidelity & Casualty Co. of New York v. Philadelphia Resins Corp., 766 F.2d 440 (10th Cir. 1985), the court found that "[a]lthough [defendant] may have known that the cable was destined for use in the Rocky Mountain region, which includes Utah, it was never specifically foreseeable . . . that [the] product was destined for the Utah market," and that the exercise of jurisdiction would be improper under the "stream of commerce" theory. Id. at 446-47.

Even under Justice O'Connor's more restrictive standard, however, Standard Waste may be said to have purposefully availed itself of the forum. Standard Waste sells its products e**xclusively** to Georgia Pacific, who has operations in **two** states: Oklahoma and Wisconsin. Although Standard Waste could legitimately claim that it cannot be held liable in every state in which its products may ultimately be found, as the continued movement of its product in

7

commerce may indeed be a unilateral act of a third party, it cannot reasonably argue that its product is not foreseeably and intentionally directed to the two states in which its exclusive buyer operates. Similarly, Standard Waste may claim that it could not be held liable in **all** states through which J.B. Hunt might choose to transport the waste paper to Georgia Pacific's facilities, as the selection of such routes would be beyond Standard Waste's control. However, Standard Waste clearly understands that J.B. Hunt will, at a minimum, transport the paper within the two states where Georgia Pacific operates and, by loading its product onto J.B. Hunt's trucks, enables, consents to, and profits from such transport. Thus, by choosing to enter an exclusive contract with Georgia Pacific, knowing that the waste paper would be transported either to Oklahoma or Wisconsin, Standard Waste purposefully directed its product into those fora.

The Tenth Circuit has, in fact, recognized the "subtle" but "critical" difference between the circumstances of this case as compared to other "stream of commerce" cases:

> If a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market, then that defendant is subject to jurisdiction there. Placing one's product into the "stream of commerce" with the expectation of distribution into particular areas is the classic example of such an indirect effort. If, however, the defendant's product comes into the forum state as the result of the actions of an unconnected third party or of fortuitous events over which the defendant has no control, then the defendant is not subject to jurisdiction in the forum state. The distinction in these cases is really no more than a refinement of the "purposefully availing" test . . . .

Id. at 446. Even Justice O'Connor noted that "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" could constitute purposeful availment. Asahi, 480 U.S. at 112. Accordingly, this Court finds that Third Party Defendant Standard Waste has sufficient contacts with Oklahoma to support specific jurisdiction.

## II. Traditional Notions of Fair Play and Substantial Justice

Even though the Court finds there are sufficient minimum contacts between Standard Waste and the State of Oklahoma, the Due Process Clause requires the Court to ensure that the exercise of personal jurisdiction over Standard Waste would not "offend traditional notions of fair play and substantial justice." OMI Holdings, Inc., 149 F.3d at 1091. This inquiry requires the defendant to prove that litigation in the chosen forum would be "'so gravely difficult and inconvenient' that [the] party unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King, 471 U.S. at 478 (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)). To determine whether the exercise of jurisdiction would be so unreasonable, the Court must consider (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. OMI Holdings, Inc., 149 F.3d at 1095 (quoting Asahi, 480 U.S. at 113).

### A. Burden on Defendant

"Certainly, 'in this age of instant communication,' and modern transportation, the burdens of litigating in a distant forum have lessened." Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (quoting Republic of Pan. v. BCCI Holdings (LUXEMBOURG) S.A., 119 F.3d, 935, 947-48. n.6 (11th Cir. 1997)). Certainly, this Court's exercise of jurisdiction over Standard Waste, a Texas company, presents none of the hardships faced by Asahi, a Japanese company who sold its component part to a Taiwanese tire manufacturer, whose product was then eventually sold in California.

9

### B. Forum's State Interest

The Court also notes that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, Inc., 149 F.3d at 1096 (quoting Burger King, 471 U.S. at 483). Plaintiffs here are all Oklahoma citizens who were injured by a toxic chemical shipped here from another state, and the State therefore has every interest to resolve the dispute and deter future incidents.

### C. Convenience and Efficiency

A plaintiff's interest in receiving convenient and effective relief generally depends on whether the plaintiff could receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit. Id. at 1097. Here, all of the Plaintiffs, including some minor children, are residents of Oklahoma. The other parties reside in either Arkansas or Texas, such that Oklahoma could be considered the geographic midpoint. Further, although the Court notes that suit has also been filed in Texas, in order to prevent the statute of limitations from running there, the litigation has already progressed somewhat further here. The Court therefore deems Oklahoma to be the most convenient forum, and the most efficient place to litigate the dispute, in accordance with the third and fourth prongs listed above.

### D. Furtherance of Social Policy

The final prong "focuses on whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states or foreign nations." Id. The exercise of jurisdiction by this Court in this case would not seriously interfere with the interests

of another sovereign.

Having found that all five of the above factors weigh in Plaintiffs' favor, the Court finds that the exercise of personal jurisdiction over Standard Wate would not "offend traditional notions of fair play and substantial justice" and is therefore proper.

## **Conclusion**

For the foregoing reasons, the Court finds that its exercise of personal jurisdiction over Third Party Defendant Standard Waste Systems, Ltd. in this litigation is proper. Accordingly, Defendant's Motion to Dismiss is DENIED in its entirety.

IT IS SO ORDERED this 9th day of August 2006.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma