## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| I. DALE LAMB, et al, | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE SCOTTS MIRACLE-GRO COMPANY, et al, | ) |
| Defendants, | ) |
| and | ) Case No. 06-CV-32-JHP |
| J.B. HUNT TRANSPORT, INC., | ) |
| Defendant and Third-Party Plaintiff, | ) |
| v. | ) |
| STANDARD WASTE SYSTEMS, LTD, | ) |
| Third-Party Defendant. | ) |

### ORDER AND OPINION

Before the Court are Defendants The Scotts Miracle Gro Company, The Scotts Product Co., The Scotts Professional Product Co., The Scotts Company, LLC's Motion for Summary Judgment and Brief in Support (Docket No. 193), Plaintiffs' Response to Defendant Scotts Miracle Gro Company, the Scotts Products Co., the Scotts Professional Product Co., and the Scotts Company LLC's Motion for Summary Judgment (Docket No. 247), and The Scotts Company, Scotts Products Co., Scotts Professional Products Co., and The Scotts Miracle Gro Company's Reply in Support of Their Motion for Summary Judgment (Docket No. 263). The Scotts Defendants allege that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law regarding Plaintiffs' negligence action against them. For

the reasons stated below, the Scotts Defendants' motion is GRANTED.

**Background**

Between April 18, 2004, and April 28, 2004, Defendant J.B. Hunt Transport, Inc., hauled a load of Turf Builder Plus 2 Weed Control fertilizer on behalf of the Scotts Defendants in one of J.B. Hunt's trailers. Several weeks later, on June 24, 2004, Defendant Daniel Kuder, a truck driver and employee of J.B. Hunt, retrieved the same trailer from a Wal-Mart facility in Sanger, Texas. Kuder brought the trailer to Defendant Standard Waste Systems' facility in Dallas, Texas, where the trailer was loaded with bales of paper by Standard Waste for delivery to the Georgia Pacific facility in Muskogee, Oklahoma, for processing. Kuder delivered the trailer to Georgia Pacific on the morning of June 25, 2005.

Plaintiffs, employees of Georgia Pacific, unloaded the bales of paper and swept out the trailer. During and after unloading the trailer, Plaintiffs reported experiencing numerous adverse reactions, including coughing, shortness of breath, and irritation of eyes, noses, and skin. In response, Georgia Pacific took a samples of the debris in the trailer and had them analyzed. Analysis of the debris revealed the presence of sodium pentachlorophenolate or sodium pentachlorophenol (PCP). (Defs. Mot. Ex. 4 at 1; Pls.' Resp. Ex. 1 at 5.) Also identified in the analysis was the chemical urea. (Pls. Resp. Ex. 1 at 74.) Plaintiffs' medical expert subsequently identified PCP as the cause of Plaintiffs' injuries. (Pls. Mot. Ex. 5.)

On January 23, 2006, Plaintiffs, including various family members of the injured employees, instituted the present action against J.B. Hunt, alleging that J.B. Hunt's negligence resulted in Plaintiffs' exposure to sodium PCP, thereby injuring Plaintiffs. Subsequently, on June 23, 2006, Plaintiffs filed their Second Amended Complaint, adding the Scotts Defendants to

the present action. Asserting that sodium PCP was "the type of [chemical] which can be used in certain fertilizers" (Second Am. Compl. ¶ 12 at 4), Plaintiffs alleged that the Scotts Defendants "[i]mproperly load[ed] and/or secur[ed] the hazardous chemical such that spillage occurred and caused the presence of the chemical" and "[f]ail[ed] to advise or notify J.B. Hunt drivers of the circumstances pertaining to the presence of the chemical." (*Id*. ¶ 15(a)-(b) at 5.) Implicit in Plaintiffs' argument is their conclusion that the Scotts Defendants' fertilizer was the source of the sodium PCP discovered in J.B. Hunt's trailer and which Plaintiffs' expert has identified as the cause of Plaintiffs' injuries.

On March 21, 2007, the Scotts Defendants filed the instant motion. In their motion, the Scotts Defendants assert that Plaintiffs have no evidence that the Scotts Defendants' fertilizer that J.B. Hunt hauled in the weeks prior to the Standard Waste delivery was the source of the sodium PCP subsequently discovered in the trailer. The Scotts Defendants therefore argue that Plaintiffs cannot prove that the Scotts Defendants proximately caused Plaintiffs injuries and that the Scotts Defendants are entitled to judgment as a matter of law with regard to Plaintiffs' negligence claim.

On April 5, 2007, Plaintiffs filed their Motion for Rule 56(f) Continuance to Respond to Scotts Defendants' Motion for Summary Judgment (Docket No. 200), requesting additional time to conduct discovery as to the Scotts Defendants' use of sodium PCP. In addition, Plaintiffs, for the first time in this case, identified urea as one of the substances found in the debris removed from J.B. Hunt's trailer and noted that urea is a chemical contained in the Scotts Defendants fertilizer and which causes the same adverse health effects as sodium PCP. (Pls.' Rule 56(f) Mot. at 7.) Recognizing that the discovery cutoff in the case was May 25, 2007, Plaintiffs

3

asserted that "[t]here is...ample time to complete the necessary discovery on this issue." (*Id*.) Thus, Plaintiffs requested that the Court grant Plaintiffs "the full time permitted by the Scheduling Order to obtain depositions, affidavits or other information." (*Id*. at 8.) The Court granted in part Plaintiffs' motion, directing that Plaintiffs' response be filed on May 18, 2007, the original dispositive motion deadline.

On May 18, 2007, Plaintiffs responded to the Scotts Defendants' motion for summary judgment. In their response, Plaintiffs' note that the Scotts Defendants "only focus[] on [their] use of sodium PCP in [their] products and ignore[] the issue of [u]rea as the cause of the Plaintiffs' injuries and symptoms." (Pls.' Resp. at 2.) According to Plaintiffs, both this issue and the "lack of sufficient proof as to [the Scotts Defendants'] possession of sodium PCP...preclude[] summary disposition." (*Id*.)

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.

The purpose of a motion for summary judgment is "to isolate and dispose of factually unsupportable claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). In making this determination, "[t]he evidence of the non-movant is to be believed, and all

4

justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, the moving party "need not affirmatively negate the nonmovant's claim." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). Instead, the moving party bears an initial burden of demonstrating "an absence of evidence to support the nonmoving party's case." *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (quotations omitted); *see also Celotex Corp*, 477 U.S. at 325. Once the moving party carries this initial burden, "the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a 'genuine issue of material fact.'" *Id.*; *see also Anderson*, 477 U.S. at 247-248. Thus, "[i]f a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *see also Celotex Corp.*, 477 U.S. at 322-23.

"Under Oklahoma's extant jurisprudence the three essential elements of a prima facie case of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach." *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997). "[U]nder traditional principles of causation in negligence actions, plaintiff must present evidence that it is 'more likely than not' that the harm suffered was caused by defendant's negligence." *Hardy v. Southwestern Bell Telephone Co.*, 910 P.2d 1024, 1027 (Okla. 1996). Nevertheless, "[w]hile absolute certainty is not required, mere possibility of causation is insufficient." *Id.* Thus, "[w]hen the matter is one of pure speculation or conjecture or the probabilities evenly

5

balanced...a party will not be permitted to recover from another whose acts, however wrongful, are not the proximate cause of the injury suffered." *Id*.

In support of their motion, the Scotts Defendants assert that "Plaintiffs have no evidence whatsoever that any [of the] Scotts Defendants' product[s] or any instrumentality within the control of any of the Scotts Defendants' was the source of the chemical which caused Plaintiffs' alleged injuries." (Defs.' Mot. at 5.) Moreover, the Scotts Defendants offer a number of undisputed[1] statements of material fact to the contrary. In particular, the Scotts Defendants assert that PCP was not an "active ingredient[] in any product manufactured by the Scotts Defendants at the time...Plaintiffs claim they were exposed" (*Id*. ¶ 10 at 4) and that "[t]he Scotts Defendants did not manufacture, purchase, acquire, or use...[PCP] at the time of the incident in which Plaintiffs claim they were exposed [and] have not used this chemical in any of their products or manufacturing processes since the late 1980's." (*Id*. ¶ 11.) As a result, the Scotts Defendants contend that "Plaintiffs cannot prove the essential elements of their claim and the Scotts Defendants are entitled to judgment in their favor as a matter of law." (*Id*.)

In their response, Plaintiffs attempt to circumvent the Scotts Defendants' arguments by again raising the issue of urea. As in their Rule 56(f) Motion, Plaintiffs again note that (1) J.B.

---

[1] Pursuant to Local Civil Rule 56.1(c), "[a]ll material facts set forth in the statement of material facts of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of material facts of the opposing party." An opposing party seeking to dispute the movant's statements of material fact must set forth "a concise statement of material facts to which the party asserts genuine issues of fact exist." *Id*. "Each fact shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed." *Id*. Although Plaintiffs identify several issues that they contend must still be resolved, they do not specifically dispute any of the Scotts Defendants' statements of material fact. As such, the Court deems the facts asserted therein to be admitted for purposes of the instant motion.

Hunt previously hauled a load of the Scotts Defendants' fertilizer in the same trailer that it later used to haul Standard Waste's paper to Georgia Pacific, (2) this fertilizer contains a high concentration of urea, (3) an analysis of the debris removed from J.B. Hunt's trailer after Plaintiffs' alleged injuries revealed the presence of urea, and (4) urea also "causes the symptoms suffered by the Plaintiffs." (Pls.' Resp. at 5.) Plaintiffs therefore argue that "in making reasonable inferences from the evidence and in the light most favorable to the Plaintiffs, there is a question of fact as to [the Scotts Defendants'] negligence, thereby precluding summary judgment." (*Id.* at 4-5.)

Key to Plaintiffs' argument is their contention that urea causes the same types of symptoms experienced by Plaintiffs. In support of this contention, Plaintiffs rely on two pieces of evidence: a Material Data Safety Sheet (MSDS) listing the potential adverse health effects of exposure to urea and a portion of the deposition of Gary Wilkinson, a research scientist and toxicologist employed by the Scotts Defendants, in which Wilkinson reads the potential health effects listed on the same MSDS. Aside from this limited evidence that urea *may* cause symptoms similar to those experienced by Plaintiffs, the Court notes that Plaintiffs offer no evidence that Plaintiffs injuries were, in fact, caused by exposure to urea. (Defs.' Reply Ex. A.) Indeed, as the Scotts Defendants point out, "Plaintiffs' experts all opine that Plaintiffs' injuries resulted from exposure to sodium [PCP]." (Defs.' Reply at 2; *see* Defs.' Mot. Ex. 5.)

Moreover, under Oklahoma law, "[w]hen an injury is of a nature requiring a skilled and professional person to determine cause and the extent thereof, the scientific question presented must necessarily be determined by testimony of skilled and professional persons." *Christian v. Gray*, 65 P.3d 591, 601-602 (Okla. 2003); *see also City of Tulsa v. State Indus. Court*, 424 P.2d

966, 969 (Okla. 1967) ("[W]here a fact issue as to the cause of an injury can be established only by men skilled in medical science, it must be established by the testimony of such men."). The Court finds the question of whether the urea present in J.B. Hunt's trailer, rather than some other chemical, caused Plaintiffs injuries is precisely the type of factual question requiring expert testimony, as such a fact is "beyond the comprehension of the ordinary lay person." *Layton v. Yankee Caithness Joint Venture, L.P.*, 774 F. Supp. 576, 580 (D. Nev. 1991). Unfortunately, due to the late-occurring nature of this particular theory of the Scotts Defendants' liability, Plaintiffs offer no expert testimony connecting exposure to urea to Plaintiffs injuries.[2]

Even viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to provide sufficient evidence to create a genuine issue of fact as to whether the urea present within the Scotts Defendants' fertilizer and J.B. Hunt's trailer caused Plaintiffs injuries. Thus, insofar as Plaintiffs' negligence claim against the Scotts Defendants

---

[2] On June 13, 2007, Plaintiffs' filed a motion to reopen discovery as to the urea issue and requested that the Court "hold its ruling on Scotts Motion for Summary Judgment in abeyance pending supplemental briefing, submit a new scheduling order for Plaintiffs' supplemental expert reports, Defendants' supplemental expert reports, and discovery cutoff for supplemental discovery depositions, and a new...trial date." (Pls. Mot. to Extend Disc. at 5.) Although Plaintiffs acknowledged that a sample analysis report obtained by J.B. Hunt of debris removed from the trailer specifically listed urea as one of the chemicals present in the trailer (*Id.* ¶ 6 at 3; Ex. A at 75), they allege that "Plaintiffs' counsel did not discover that [u]rea was a component of the sampling from the J.B. Hunt trailer until late April 2007." (*Id.* ¶ 7.)

The Court notes, however, that Plaintiffs relied on this same sample analysis report, and its reference to urea, in their above-described Motion for Rule 56(f) Continuance filed on April 5, 2007 (*see* Pls.' Mot. Ex. 9 at 75), indicating that Plaintiffs had clearly "discovered" that urea was present in J.B. Hunt's trailer prior to "late April 2007." Moreover, J.B. Hunt's Rule 26 Disclosures, filed with the Court on March 31, 2006, indicate that Plaintiffs received the sample analysis report almost fifteen months ago, well in advance of the Scotts Defendants' motion for summary judgment. Because Plaintiffs' motion to reopen discovery does not adequately justify Plaintiffs apparent failure, for more than a year, to thoroughly review the sample analysis report and thereby "discover" the presence of urea, the Court denied Plaintiffs' motion.

depends upon urea being the chemical that caused Plaintiffs' injuries, Plaintiffs' claim fails as a matter of law.

Plaintiffs also contend that the Scotts Defendants have failed to prove that they did not possess sodium PCP. In particular, Plaintiffs note that the Scotts Defendants rely on the affidavit of Gary Wilkinson as the basis for their assertion that "sodium PCP was not present in [the Scotts Defendants'] facilities currently or since late 1980's." (Pls.' Resp. at 6.) Nevertheless, Plaintiffs assert that in his later deposition, Wilkinson "admitted...that he was speculating as to sodium PCP's being present on Scotts' premises." (*Id*.) Likewise, Plaintiffs allege that Wilkinson "relied on information from time limited computer databases as well as hearsay statements of others in support of his statements made in his affidavit." (*Id*.) Accordingly, Plaintiffs argue Wilkinson's affidavit "is flawed in that it makes statements impliedly based upon personal knowledge when in fact they are not" and is therefore "not sufficiently reliable to support [the Scotts' Defendants'] Motion for Summary Judgment." (*Id*.)

The Court notes, however, that Wilkinson's acknowledged speculation as to the presence of the chemical in any of the Scotts Defendants' facilities has no bearing on the Scotts Defendants other undisputed assertions that they do not currently manufacture or use PCP in their products and that they had not done so for almost 20 years at the time of Plaintiffs' injuries. (Defs.' Mot. ¶ 10-11 at 4.) Likewise, although the affidavit itself acknowledges that Wilkinson "ran a query in the bulk raw material database...[to] confirm[] that neither...[PCP] nor any of its derivatives were present" and "consulted with [Scotts'] Purchasing Department [to] confirm[] that the absence of the chemical from the bulk raw materials database means the chemical has not been ordered by [Scotts]...from at least the 1980's to present" (*Id*. ¶ 9 at 2-3), Plaintiffs do

9

not challenge Wilkinson's additional assertions that he (1) is personally responsible for preparing "domestic and international Material Data Safety Sheets for all products manufactured and/or sold in the United States by [Scotts]" (Defs.' Mot. Ex. 1 ¶ 4 at 2), (2) "ha[s] not personally prepared or reviewed any Material Safety Data Sheets or Registrations for...[PCP] or for any Scotts products containing...[PCP]...since 2000 to present" (*Id*. ¶ 5 at 2), and (3) has "also checked historical Material Safety Data Sheets which confirmed that no...[PCP] [was] used in any products from at least the late 1980's to present." (*Id*.) Thus, in spite of Plaintiffs' contentions, Wilkinson's affidavit would appear, at least in part, to have been "made on personal knowledge." Fed. R. Civ. P. 56(e).

Moreover, as the Scotts Defendants correctly point out, aside from challenging the Scotts Defendants' evidence that the Scotts Defendants were not the source of the sodium PCP discovered in J.B. Hunt's trailer, Plaintiffs offer no evidence of their own proving that the Scotts Defendants or their fertilizer were the source of the sodium PCP that Plaintiffs allege caused their injuries. As noted above, the nonmoving party bears the burden, in response to a motion for summary judgment, to come forward with evidence from which a reasonable jury could find in its favor. Absent any evidence that the Scotts Defendants' fertilizer, rather than a prior or subsequent load transported by J.B. Hunt in the same trailer, was the probable source of the sodium PCP that allegedly injured Plaintiffs, any such conclusion would be inherently speculative. Accordingly, based upon the Scotts Defendants' undisputed statements of material fact and the complete lack of any contrary evidence from Plaintiffs, the Court concludes that Plaintiffs have failed to meet their burden under Rule 56 to come forward with sufficient evidence to create a genuine factual dispute as to whether the Scotts Defendants were the source

of the sodium PCP in J.B. Hunt's trailer.  Because proof of this underlying fact is essential to Plaintiffs' claim that the Scotts Defendants were the proximate cause of Plaintiffs' injuries, the Court finds that Plaintiffs cannot establish all elements of their negligence claim against the Scotts Defendants, and the Scotts Defendants are entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, Defendants The Scotts Miracle Gro Company, The Scotts Product Co., The Scotts Professional Product Co., The Scotts Company, LLC's Motion for Summary Judgment and Brief in Support (Docket No. 193) is hereby GRANTED.

IT IS SO ORDERED this 2nd day of July, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma