# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| I. DALE LAMB, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| THE SCOTTS MIRACLE-GRO ) | |
| COMPANY, et al, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | Case No. 06-CV-32-JHP |
| ) | |
| J.B. HUNT TRANSPORT, INC., ) | |
| ) | |
| Defendant and ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| STANDARD WASTE SYSTEMS, LTD, ) | |
| ) | |
| Third-Party Defendant. ) | |

## ORDER AND OPINION

Before the Court are Defendants J.B. Hunt Transport Services, Inc., J.B. Hunt Transport, Inc. and Daniel Kuder's Motion for Summary Judgment and Brief in Support (Docket No. 251), Plaintiffs' Response to Defendants J.B. Hunt Transport Services, Inc., J.B. Hunt Transport, Inc. and Daniel Kuder's Motion for Summary Judgment (Docket No. 270), and the Reply in Support of Motion for Summary Judgment of Defendant J.B. Hunt Transport, Inc. and Daniel Kuder (Docket No. 301). Defendants J.B. Hunt Transport Services, Inc., and Daniel Kuder (collectively "the J.B. Hunt Defendants")[1] allege that there is no controversy as to any material

---

[1] The Court notes that all claims by Plaintiffs against Defendant J.B. Hunt Transport Services, Inc., were dismissed without prejudice by stipulation of the parties on June 4, 2007.

fact relating to Plaintiffs' negligence claim against them and that they are therefore entitled to judgment as a matter of law. For the reasons set forth below, the motion is GRANTED.

**Background**

On June 25, 2004, Defendant Daniel Kuder, a truck driver and employee of Defendant J.B. Hunt Transport, Inc., arrived at a Wal-Mart distribution center in Sanger, Texas, where he dropped off a trailer for unloading. Kuder then proceeded to another area of the distribution center where empty trailers awaiting removal are stored. There he located trailer JBHZ564531, the trailer at issue in this case. After attaching the trailer to his truck, he inspected the trailer, using a flashlight to check the roof for holes and the bed for debris and trash. Satisfied with the trailer's condition, Kuder next drove to the collection facility of Defendant Standard Waste Systems, Ltd, a paper recycling company, in Dallas, Texas, where Standard Waste's employees proceeded to load the trailer with bales of paper. Kuder then departed for Muskogee, Oklahoma, where he dropped off the trailer at non-party Georgia Pacific's processing plant.

After unloading the baled paper from J.B. Hunt's trailer, Plaintiffs, employees of Georgia Pacific, began to sweep dust and debris from the bed of the trailer. While sweeping dust and debris from the trailer, Plaintiffs experienced various adverse reactions, including coughing, shortness of breath, and irritation of their eyes, noses, and skin. In response, both Georgia Pacific and J.B. Hunt collected samples of the dust and debris contained in the trailer and had them analyzed. The samples tested positive for sodium pentachlorophenolate or sodium pentachlorophenol (sodium PCP), a hazardous material.

---

The Court also notes that nothing in this Order and Opinion affects the status of Defendant Illinois National Insurance Company, who is not a party to motion at issue.

On January 23, 2006, Plaintiffs, including various family members of the injured employees, instituted the present action, alleging that as a result of the negligence of the J.B. Hunt, Plaintiffs were exposed to sodium PCP. As a result of their alleged injuries, Plaintiffs sought damages for medical expenses, pain, suffering, impairment, disfigurement, lost earnings, permanent injuries, and loss of consortium. Subsequently, Plaintiffs amended their complaint to assert similar claims against Kuder, Standard Waste, and Defendant Scotts Miracle-Gro Company and its subsidiaries, whose fertilizer, which Plaintiffs' alleged contained sodium PCP, J.B. Hunt had previously transported in the same trailer several weeks before Plaintiffs injuries.

On May 18, 2007, the J.B. Hunt Defendants filed their motion for summary judgment, asserting that no genuine issues of material fact remain regarding their role in this action, and that they are entitled to judgment as a matter of law because Plaintiffs lack sufficient evidence to support all elements of their negligence action against the J.B. Hunt Defendants. On May 31, 2007, Plaintiffs filed their response, arguing that although "the exact source of the hazardous material is still unknown, genuine issues of material fact exist that would allow a jury to find that [the J.B. Hunt] Defendants' conduct negligently exposed Plaintiffs to the hazardous material...result[ing] in [Plaintiffs'] injuries." (Pls.' Resp. at 2.)

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.

The purpose of a motion for summary judgment is "to isolate and dispose of factually unsupportable claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, the moving party "need not affirmatively negate the nonmovant's claim." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). Instead, the moving party bears an initial burden of demonstrating "an absence of evidence to support the nonmoving party's case." *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (quotations omitted); *see also Celotex*, 477 U.S. at 325. Once the moving party carries this initial burden, "the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a 'genuine issue of material fact.'" *Id.*; *see also Anderson*, 477 U.S. at 247-248. Thus, "[i]f a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *see also Celotex*, 477 U.S. at 322-23.

"To establish negligence liability for an injury, plaintiffs must prove that (1) defendants owed them a *duty to protect* them from injury, (2) defendants *breached that duty*, and (3) defendants' breach was a *proximate cause* of plaintiffs' injuries." *Iglehart v. Board of County Com'rs of Rogers County*, 60 P.3d 497, 502 (Okla. 2002). "[U]nder traditional principles of causation in negligence actions, plaintiff must present evidence that it is "more likely than not"

4

that the harm suffered was caused by defendant's negligence." *Hardy v. Southwestern Bell Telephone Co.*, 910 P.2d 1024, 1027 (Okla. 1996). Nevertheless, "[w]hile absolute certainty is not required, mere possibility of causation is insufficient." *Id*. Thus, "[w]hen the matter is one of pure speculation or conjecture or the probabilities evenly balanced...a party will not be permitted to recover from another whose acts, however wrongful, are not the proximate cause of the injury suffered." *Id*.

Moreover, a threshold question in any negligence action is "whether a defendant owes a plaintiff a duty of care." *Iglehart*, 60 P.3d at 502. Oklahoma courts "recognize the traditional common-law rule that whenever one person is by circumstances placed in such a position with regard to another, that, if he...did not exercise ordinary care and skill in his...own conduct, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." *Id*. The primary consideration in determining whether one party owes a duty of care to another is foreseeability. *Id*. As a general rule, "a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'" *Id*. (quoting *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 519 (Okla. 1990)). "Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct 'creates a generalized and foreseeable risk of harming others.'" *Id*. (quoting *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1321 (Okla. 1996)). This is a question of law for the court. *Id*.

In their motion for summary judgment, the J.B. Hunt Defendants contend that Plaintiffs' negligence claim against them must fail because the J.B. Hunt Defendants do not owe Plaintiffs a

duty of care. In support of their motion, Plaintiffs first offer a number undisputed[2] statements of material fact: (1) prior to traveling to Standard Waste's facility in Dallas, Texas, Kuder inspected the trailer and found it to be "clean and in good condition" (Defs.' Mot. ¶ 3 at 3), (2) when Kuder arrived at the Dallas facility, Standard Waste's employees loaded the trailer with paper (*Id.* ¶ 4), (3) after the paper was loaded, Kuder "climbed into the trailer and confirmed that the number of loaded bales matched the bill of lading" (*Id.* ¶ 5), (4) "[a]t no time during or after transporting th[e] [Standard Waste] load did...Kuder notice anything at all out of the ordinary" (*Id.* ¶ 6 at 4), (5) at no point did Kuder "experience[]...symptoms similar to those experienced by Plaintiffs" (*Id.* ¶ 17 at 6), and (6) the J.B. Hunt Defendants "transported no hazardous materials in th[e] trailer for the six months prior to th[e] incident [during which Plaintiffs' were allegedly injured]" (*Id.* ¶ 18 at 6). On the basis of these undisputed facts and the corresponding evidentiary submissions, the J.B. Hunt Defendants contend that they "had no notice...or knowledge of the presence of [sodium PCP] in the trailer and could not have foreseen that Plaintiffs might be harmed by coming into contact with the trailer." (*Id.* at 2-3.) As a result, the J.B. Hunt Defendants assert that had no duty to protect Plaintiffs from the injuries that Plaintiffs

---

[2] Pursuant to Local Civil Rule 56.1(c), "[a]ll material facts set forth in the statement of material facts of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of material facts of the opposing party." An opposing party seeking to dispute the movant's statements of material fact must set forth "a concise statement of material facts to which the party asserts genuine issues of fact exist." *Id.* "Each fact shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed." *Id.* The only statement by the J.B. Hunt Defendants that Plaintiffs dispute is their assertion that when Kuder retrieved the trailer from Wal-Mart, he "'began his usual process' of preparing the trailer." (Pls.' Resp. 2.) Accordingly, all other statements of material fact offered by the J.B. Hunt Defendants are deemed admitted for the purposes of the instant motion.

allegedly sustained from exposure to sodium PCP in J.B. Hunt's trailer.

In their response, Plaintiffs do not directly address the J.B. Hunt Defendants' argument that it had no duty to protect Plaintiffs from harm. Indeed, the only four "genuine issues of material [fact]" that Plaintiffs identify as being in dispute are (1) "[w]hether J.B. Hunt hauled [sodium PCP] in any loads prior to the date of [Plaintiffs' injuries]," (2) "[w]hether [sodium] PCP was in the trailer before Defendant Kuder picked up the load of waste paper at Defendant [Standard Waste's] facility," (3) [w]hether Defendant Kuder failed to exercise ordinary care under the circumstances by not noticing the fertilizer-appearing [sodium] PCP on the floor of the trailer and taking appropriate action," and (4) "[w]hether [the J.B. Hunt] Defendants took all reasonable precautions to prevent injury to others working in and around their trailer." (Pls.' Resp. ¶ 1-4 at 5.) Similarly, in summarizing their counter-arguments, Plaintiffs state that "the facts establish [either] that J.B. Hunt's failure to comply with its own procedures, as well as recognized industry standards, caused or contributed to Plaintiffs' exposure and subsequent injury...[or that] J.B. Hunt's general negligence can be inferred under the doctrine of *res ipsa loquitur*." (Id. at 7.) In essence, Plaintiffs arguments concern the means by which sodium PCP entered J.B. Hunt's trailer and whether the J.B. Hunt Defendants exercised ordinary care in regard thereto. Although such arguments are relevant to whether the J.B. Hunt Defendants proximately caused Plaintiffs' injuries, none of these arguments squarely addresses the J.B. Hunt Defendants' primary assertion that it had no duty to Plaintiffs.

The Court is therefore faced with the unusual situation of a motion for summary judgment, response, and reply all at cross-purposes, with one side addressing the element of duty and the other the element of proximate cause. Nevertheless, Plaintiffs response places the

7

element of proximate cause squarely at issue. Having therefore considered both the issues of duty and proximate cause as presented in the motion and response thereto, the Court concludes that, in light of the undisputed material facts of the case, Plaintiffs' have failed to come forward with sufficient evidence from which a reasonable jury could conclude that the J.B. Hunt Defendants' negligence caused Plaintiffs' injuries.

### A. Whether the J.B. Hunt Defendants' Failure to Properly Handle Prior Loads Was the Proximate Cause of Plaintiffs' Injuries

In response to the J.B. Hunt Defendants' motion, Plaintiffs acknowledge that "the original source of [the] hazardous material [that caused Plaintiffs' injuries] is not confirmed." (Pls.' Resp. at 7.) Nonetheless, Plaintiffs assert that "only two sources exist: [1] a load of cargo hauled in the trailer prior to the [Standard Waste] load, or [2] the [Standard Waste load]." (*Id.*) Under the theory that a prior load was the source of the PCP that allegedly caused Plaintiffs' injuries, Plaintiffs note that: (1) "J.B. Hunt train[s] drivers how to clean out a trailer," (2) Kuder "was instructed to sweep out the trailers and should have swept out the trailer," and (3) Kuder "failed to sweep the trailer before [Standard Waste's] paper was loaded," allegedly in violation of J.B. Hunt's own policies. (*Id.* at 8). Moreover, Plaintiffs assert that "[a]fter the waste paper was unloaded, the debris containing PCP was visible to the human eye." (*Id.*) Plaintiffs therefore contend that "[h]ad...Kuder actually followed procedure and swept the trailer, he would have either eliminated the risk of exposure to the Plaintiffs or at least discovered hazardous [the] material's presence and taken appropriate action." (*Id.* at 8-9.)

Even if the J.B. Hunt Defendants had a duty to Plaintiffs to clean the trailer between loads, the J.B. Hunt Defendants' supposed breach of that duty by failing to sweep the trailer out

8

prior to the Standard Waste load could only have proximately caused Plaintiffs' injuries if the PCP that Plaintiffs allege caused those injuries was already present in the trailer. Thus, to succeed under this theory of negligence Plaintiffs must be able to produce sufficient evidence from which a reasonable jury could conclude that PCP was present in J.B. Hunt's trailer prior to the Standard Waste load. As noted above, however, Plaintiffs do not dispute the J.B. Hunt Defendants' assertions that (1) "[t]he trailer was clean and in good condition" (Defs.' Mot. ¶ 3 at 3) and (2) J.B. Hunt "transported no hazardous materials in [the] trailer for the six months prior to this incident" (*id*. ¶ 18 at 6). Moreover, Plaintiffs have presented no evidence that any previous load hauled in J.B. Hunt's trailer contained PCP. Assuming, pursuant to LCvR 56.1(c), that the trailer was clean prior to the Standard Waste load and that no hazardous materials, including PCP, had been hauled in the trailer for six months prior to the incident in question, the Court concludes that Plaintiffs have not come forward with evidence sufficient to support a finding that PCP was present in J.B. Hunt's trailer prior to the Standard Waste load. As a result, Plaintiffs cannot support their assertion that the J.B. Hunt Defendants proximately caused Plaintiffs' injuries.[3]

**B.     Whether the J.B. Hunt Defendants' Handling of the Standard Waste Load Constitutes Negligence**

Alternatively, Plaintiffs contend that "it is possible that the [Standard Waste] paper was contaminated with the hazardous material." (Pls.' Resp. at 9.) Thus, "[a]ssuming arguendo that

---

[3] To the extent that Plaintiffs also attempt to raise the presence of urea as a possible source of both Plaintiffs' injuries and the J.B. Hunt Defendants' negligence, the Court by reference incorporates herein its analysis of that issue contained in the Court's Order and Opinion regarding the Scotts Defendants' Motion for Summary Judgment (Docket No. 193).

the PCP was in the load of [Standard Waste] paper,"[4] Plaintiffs conclude that "two separate omissions by [the] J.B. Hunt [Defendants] caused or contributed to Plaintiffs' exposure to the hazardous material." (*Id*.) First, the J.B. Hunt Defendants contend that "the Bill of Lading provided by [Standard Waste] to [the] J.B. Hunt [Defendants]...included a hazardous materials certification and that "[t]his certification should have triggered precautions for hazardous materials" (*id*.), which had they been taken would have prevented Plaintiffs' injuries. Second, Plaintiffs contend that the J.B. Hunt Defendants "failed to secure their cargo." (*Id*.) According to Plaintiffs, "[t]his failure allowed the bales of paper to shift," which "would have allowed some of the PCP in the paper to settle onto the floor of the trailer." (*Id*.) As a result, Plaintiffs suggest that "[h]ad the waste paper been secured, as required by both federal regulation and by [the J.B. Hunt] Defendants' own policy, then Plaintiffs' subsequent exposure to this hazardous material may have been prevented or at least lessened." (*Id*. at 9-10.)

Although not stated explicitly, by premising the J.B. Hunt Defendants' liability on their having failed to comply with various federal regulations and internal policies, Plaintiffs appear to be invoking the negligence per se doctrine. Under this doctrine, a party that violates a statute or other ordinance is liable for another party's injury when "(1) the injury [was] caused by the violation, (2) the injury [is] of a type intended to be prevented by the ordinance, and (3) the injured party [is] one of the class intended to be protected by the statute. *Ohio Cas. Ins. Co. v. Todd*, 813 P.2d 508, 510 (Okla. 1991). Plaintiffs seem to suggest that these regulations and

---

[4] Although Plaintiffs offer no affirmative evidence that Standard Waste's paper contained the sodium PCP that allegedly caused Plaintiffs' injuries, in its Response to Plaintiffs' First Requests for Admission, J.B. Hunt admitted that sodium PCP was present in Standard Waste's paper. (Pls.' Resp. Ex. H at 2-4.) Thus, the Court will assume that Standard Waste's paper contained sodium PCP for purposes of these defendants.

policies created a duty on behalf of the J.B. Hunt Defendants toward Plaintiffs and that, by violating them and thereby causing or contributing to Plaintiffs' injuries, the J.B. Hunt Defendants were negligent.

In support of their first argument, Plaintiffs rely solely upon the report and deposition testimony of Whitney Morgan, Plaintiffs' motor vehicle expert. In his report, Morgan refers to the hazardous materials regulations contained in subchapter C of Title 49 of the Code of Federal Regulations, which apply "to each person who transports a hazardous material in commerce." 49 C.F.R. § 171.1(c). Morgan opines that "[a]bsent a failure on the part of the motor carrier and the shipper to be knowledgeable of and properly comply with the applicable safety and hazardous materials regulations pertaining to the identification, packaging, marking, labeling, placarding, loading, securement, and transportation of hazardous cargo, it is unlikely to have a hazardous material, such as sodium [PCP], on the floor of a cargo trailer." (Pls.' Resp. Ex. 2 at 6.) Although acknowledging that "[t]he hazardous materials column on the shipping document is not marked so as to indicate a hazardous material," Morgan asserts that "the hazardous materials 'Shippers Certification' is signed, indicating that a hazardous material has been offered for transportation." (*Id*. at 8.) Apparently concluding that the J.B. Hunt Defendants were therefore transporting hazardous materials, Morgan concludes that if J.B. Hunt "had the necessary safety management controls in place and functioning, it is probably more true than not, the trailer...would not have contained [sodium PCP]." (*Id*. at 9.) Likewise, in his deposition testimony, although acknowledging that the signing of the hazardous materials certification was probably inadvertent, Morgan asserts that "Kuder should have picked up on that and at least asked some questions."

Based on the evidence provided, however, the Court concludes that Plaintiffs have failed to come forward with sufficient evidence to prove that the J.B. Hunt Defendants actions constituted a violation of the applicable statutes and regulations governing hazardous materials. The Court notes that federal hazardous materials transportation law imposes civil liability only upon those parties who "knowingly violate[]...a [hazardous materials] regulation." 49 U.S.C. § 5123(a)(1); *see also* 49 C.F.R. § 171.1(g). "A person acts knowingly when...(A) the person has actual knowledge of the facts giving rise to the violation; or (B) a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." *Id*. As noted above, the only evidence that Plaintiffs' cite for the proposition that the J.B. Hunt Defendants knew or should have known that the Standard Waste load contained hazardous materials, thereby triggering the J.B. Hunt Defendants' obligation to take "precautions for hazardous materials," is the signed "Shippers Certification." Nonetheless, although Morgan asserts, without providing any support, that this is a hazardous materials certification that is only signed when a party seeks to ship hazardous materials, nowhere in the "Shippers Certification" does the phrase "hazardous materials" appear. Instead, the "Shippers Certification" signed by Standard Waste merely certifies "that the above-named materials are properly classified, described, packaged, marked, and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation." (Defs' Reply Ex. A.) Indeed, from the face of the document, by signing the "Shippers Certification," Standard Waste did nothing more than affirm the accuracy of their labeling of the paper being sent to Georgia Pacific—including the omission of any indication that the paper contained hazardous materials. Even drawing all inferences in favor of Plaintiffs, the Court concludes Plaintiffs have come forward with insufficient evidence

12

establishing that the J.B. Hunt Defendants knowingly transported hazardous materials in violation of regulations applicable to hazardous materials carriers, precluding any application of the negligence per se doctrine based upon such alleged violations.

Plaintiffs' expert Morgan also states that the Federal Motor Carrier Safety Regulations "require that no person shall drive a commercial motor vehicle nor shall a commercial motor carrier require or permit a person to drive a commercial motor vehicle unless the vehicles [sic] cargo is properly distributed or adequately secured as specified in [49 C.F.R.] § 393.100-106." (Pls.' Resp. Ex. D at 9.) According to Morgan, the purpose of these regulations is to "protect[] not only the load, but [also] the driver and the vehicle, as far as the operation of the vehicle" by "prevent[ing] the cargo from shifting or mov[ing] or...damag[ing]...itself. (Pls.' Resp. Ex. A at 27-28.) Morgan concludes that the J.B. Hunt Defendants' failure to properly secure the load as required by the regulations could therefore have permitted the sodium PCP allegedly contained in Standard Waste's paper to "shake out" onto the bed of the trailer, where it could injure Plaintiffs. (*Id*. at 28.)

Assuming that the Standard Waste load contained sodium PCP and that the J.B. Hunt Defendants failed to properly secure their cargo, however, Plaintiffs have offered no evidence that they are members of the class intended to be protected by these regulations or that their injuries are the type of harm that the regulations are intended to prevent. The regulations cited by Plaintiffs' expert provide that "[e]ach commercial vehicle must, when transporting cargo on public roads, be loaded and equipped, and the cargo secured...to prevent the cargo from leaking, spilling, blowing or falling from the motor vehicle," 49 C.F.R. § 393.100(b), and that "[c]argo must be contained, immobilized or secured...to prevent shifting upon or within the vehicle to

13

such an extent that the vehicle's stability or maneuverability is adversely affected." 49 C.F.R. § 393.100(c). Thus, the regulations themselves indicate that they are intended to ensure the safety of the cargo itself and of the driver and other travelers who could be endangered by loose or unstable cargo while the cargo is in transit. Neither the regulations cited by Morgan nor his report and deposition testimony indicate that the regulations were intended to guard against post-transit exposure to harmful cargo by people in the position of Plaintiffs. Thus, Plaintiffs cannot establish that the J.B. Hunt Defendants were negligent per se as a result of having allegedly violated these regulations.

The same inadequacies plague Plaintiffs' reliance on the J.B. Hunt Defendants' alleged violation of J.B. Hunt's own policies requiring that cargo be secured prior to transport. Plaintiffs offer no evidence that J.B. Hunt's internal policies governing the securement of cargo were intended to protect individuals in the position of Plaintiffs or to prevent the type of injuries suffered by Plaintiffs. Moreover, the Court questions whether J.B. Hunt's decision to adopt policies relating to the handling of cargo imposes upon the J.B. Hunt Defendants a duty to people in the position of Plaintiffs to follow those policies. *See Rogers v. Anheuser-Busch, Inc.*, No. 06-6141, 2007 WL 1847208, at * 5 (10th Cir. June 28, 2007) (questioning argument that Anheuser-Busch could be held liable for injuries in drunk driving accident based upon its failure to follow internal policies designed to minimize alcohol-induced accidents).

In addition, even under a common law theory of negligence, the Court concludes that the injuries suffered by Plaintiffs as a result of the Standard Waste load were insufficiently foreseeable to impose upon the J.B. Hunt Defendants a duty to guard against those injuries. As noted above, the uncontested facts of this case establish that no hazardous materials were

14

transported in J.B. Hunt's trailer in the six months prior to the Standard Waste load. Moreover, aside from the apparently inadvertently signed "Shippers Certification," which, as the Court noted above, does not on its face place a recipient on notice that a hazardous material is being transported, the J.B. Hunt Defendants had no reason to believe that the load of paper from Standard Waste, not otherwise identified, labeled, or packaged as hazardous, contained sodium PCP or any other hazardous material. Plaintiffs cite no authority for the proposition that a motor carrier that is not knowingly transporting hazardous materials has a duty to those in Plaintiffs' position to guard against or warn as to potential exposure to such materials. Thus, under the circumstances established by the undisputed evidence in this case, the Court concludes that the presence of a hazardous material in Standard Waste's paper and the harm resulting therefrom is the type of unforeseeable event that places Plaintiffs' injuries outside the zone of risk otherwise created by the J.B. Hunt Defendants' conduct, as a motor carrier and its driver, in transporting goods. *See Iglehart*, 60 P.3d at 502.

### C. Whether the J.B. Hunt Defendants May Otherwise Be Held Liable for Negligence Pursuant to the Doctrine of *Res Ipsa Loquitur*

Finally, Plaintiffs argue that they "are not obligated to pinpoint the source of the hazardous material that led to their injury because the doctrine of *res ipsa loquitur* applies to these facts." (Id. at 10.) As the Oklahoma Supreme Court explained:

> *Res ipsa loquitur* is a pattern of proof which may be followed when an injury is alleged to have been negligently inflicted and the harm is shown not to occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to have produced that harm fails to exercise due care to prevent its occurrence. The purpose of the *res ipsa loquitur* evidentiary rule is to aid a plaintiff in making out a prima facie case of negligence in circumstances when direct proof of why the harm happened is beyond the power or knowledge of the plaintiff. Once the foundation facts for *res ipsa loquitur* are established,

15

negligence may be inferred from the injurious occurrence without the aid of circumstances pointing to the responsible cause. The burden of producing further evidence (going forward with proof), but not the ultimate burden of persuasion, is then shifted to the defendant.

*Harder v. F.C. Clinton, Inc.* 948 P.2d 298, 302-303 (Okla. 1997). To obtain the inference permitted under this doctrine, the Plaintiff must show (1) "an injury that does not occur in the usual course of everyday conduct"; (2) "the defendant exclusively controlled the instrumentality that caused the injury"; (3) "evidence of the true explanation for the harm's occurrence is more accessible to the defendant than to the plaintiff"; and (4) "the circumstances surrounding the harmful event are not likely to produce an injury unless the defendant fails to exercise due care to prevent its occurrence." *Id*. n.12.

In their reply, the J.B. Hunt Defendants challenge Plaintiffs' ability to meet all of the foundational elements necessary for application of *res ipsa loquitur* to this case. In particular, the J.B. Hunt Defendants assert that Plaintiffs cannot prove the J.B. Hunt Defendants exercised "exclusive control over the instrumentality that caused Plaintiffs' injuries." (Defs.' Reply at 8.) According to the J.B. Hunt Defendants, because they "did not have exclusive control over the contents of [the] trailer...[a]ssuming the instrumentality that caused Plaintiffs' injury, i.e. the sodium PCP, was in the trailer as [the] result of a prior load, Plaintiffs cannot prove that [the] J.B. Hunt [Defendants] had exclusive control over such load." (*Id*. at 9.)

The Court recognizes that the concept of exclusive control is a flexible one, which "does no more than eliminate, within reason, all explanations for the injurious event other than the defendant's negligence." *Qualls*, 863 P.2d at 462. In *Qualls*, the Oklahoma Supreme Court noted:

Whether a defendant at the critical point in contest had "exclusive control" of an

16

> instrumentality in the *res ipsa loquitur* sense often constitutes a mixed question of law and fact. At the threshold the issue is one of law for the judge. It calls for the trial court to decide whether the evidence may lead reasonable persons to reach different conclusions. If the proof is not so overwhelmingly one-sided as to make the control element a matter of law, the question must go to the jury.

*Id*. at 461. Thus, in *Qualls*, the Oklahoma Supreme Court held that "control may rest in one who assumes responsibility for the fitness of an instrumentality for its intended use." *Id*. at 462 (finding a company that manufactured, installed, and contracted to service an elevator to be in exclusive control of the elevator so as to subject the company to negligence claim under doctrine of *res ipsa loquitur* for an elevator malfunction that injured plaintiff).

In contrast, in *Wheeler v. Koch Gathering Systems, Inc.*, 131 F.3d 898, 904 (10th Cir. 1997), the Tenth Circuit, applying Oklahoma law, found the evidence insufficient to establish that the defendant had exclusive control over the soil within in its pipeline trench in which the plaintiff's combine had become stuck. The Tenth Circuit observed that "for twenty months, the soil was subject to disturbance outside of [defendant's] control by [a third party's] farming equipment, natural conditions, such as heavy rainfall, and [plaintiff's] combine on the day of the accident." *Id*. at 904 (10th Cir. 1997). Accordingly, the Tenth Circuit concluded that plaintiff "ha[d] not sufficiently eliminated, within reason, other probable causes of his accident than [defendant's] negligence for us to conclude an Oklahoma court would consider a *res ipsa loquitur* instruction proper." *Id*.

The Court finds the present case to be more analogous to *Wheeler* than to *Qualls*. Here, the undisputed facts of the case establish that (1) J.B. Hunt's trailers are customarily left in the possession of the recipient of a shipment, to be retrieved by another driver, (2) the trailer in question was in Wal-Mart's possession prior to Kuder's arrival, (3) Kuder transported the trailer

17

to Standard Waste's facility in Dallas, Texas, (4) Standard Waste's employees loaded the paper into the trailer, (5) Kuder dropped the trailer off at Georgia Pacific's facility in Muskogee, Oklahoma, and (6) Plaintiffs unloaded Standard Waste's paper. Thus, from the undisputed facts of this case, in the period immediately preceding Plaintiffs' injuries, both the trailer and its contents were frequently in the control of numerous other parties and non-parties to this litigation.

As the Tenth Circuit has made clear, "[c]ontrol is not exclusive for purposes of the *res ipsa loquitur* doctrine where the proof does not reasonably eliminate the activities of a third party or condition having access to the instrumentality, which could alternatively be a probable cause of the plaintiff's accident." *Wheeler*, 131 F.3d at 904. Even viewing all of the evidence presented in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have not created a genuine issue of material fact as to the J.B. Hunt Defendants' exclusive control over the instrumentality causing Plaintiffs' injuries, and that the evidence is sufficiently one-sided to conclude, as a matter of law, that neither the trailer nor its contents were in J.B. Hunt's exclusive control. As a result, the Court concludes that Plaintiffs are not entitled to invoke the doctrine of *res ipsa loquitur* in support of their negligence claim against the J.B. Hunt Defendants.

## Conclusion

For the reasons set forth above, Defendants J.B. Hunt Transport Services, Inc., J.B. Hunt Transport, Inc. and Daniel Kuder's Motion for Summary Judgment and Brief in Support (Docket No. 251) is hereby GRANTED.

IT IS SO ORDERED this 2nd day of July, 2007.

James H. Payne
United States District Judge
Eastern District of Oklahoma