## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| I. DALE LAMB, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| THE SCOTTS MIRACLE-GRO ) | |
| COMPANY, et al, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | Case No. 06-CV-32-JHP |
| ) | |
| J.B. HUNT TRANSPORT, INC., ) | |
| ) | |
| Defendant and ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| STANDARD WASTE SYSTEMS, LTD, ) | |
| ) | |
| Third-Party Defendant. ) | |

### ORDER AND OPINION

Before the Court are Defendant Standard Waste System LTD.'s Brief in Support of Motion for Summary Judgment (Docket No. 194), Plaintiffs' Response to Defendant Standard Waste Systems Motion for Summary Judgment (Docket No. 210), and Defendant Standard Waste System LTD.'s Reply to Plaintiffs' Response to Motion for Summary Judgment (Docket No. 223). Standard Waste asserts that there are no genuine issues of material fact remaining with regard to its negligence and that it is therefore entitled to judgment as a matter of law against Plaintiffs.[1] For the reasons set forth below, the motion is GRANTED.

---

[1] Standard Waste's motion also seeks judgment against the Defendant J.B. Hunt Transport, Inc., on their third-party claim for contribution. Although J.B. Hunt filed a response

**Background**

On June 25, 2004, Defendant Daniel Kuder, a truck driver and employee of Defendant J.B. Hunt Transport, Inc., transported several bales of recyclable paper from Defendant Standard Waste Systems, Inc.'s facility in Dallas, Texas, to non-party Georgia Pacific's facility in Muskogee, Oklahoma. Plaintiffs, employees of Georgia Pacific, unloaded the paper, transferring it to a pulper for processing. After unloading each of the bales, Plaintiffs began to sweep the remaining dust and debris from the bed of the trailer. While sweeping the dust and debris from the trailer, Plaintiffs experienced various adverse reactions, including coughing, shortness of breath, and irritation of their eyes, noses, and skin. In response, both Georgia Pacific and J.B. Hunt collected samples of the dust and debris contained in the trailer and had them analyzed. The samples tested positive for sodium pentachlorophenolate or sodium pentachlorophenol (sodium PCP), a hazardous material.

On January 23, 2006, Plaintiffs, including various family members of the injured employees, instituted the present action, alleging that as a result of the negligence of J.B. Hunt, Plaintiffs were exposed to sodium PCP. As a result of their alleged injuries, Plaintiffs sought damages for medical expenses, pain, suffering, impairment, disfigurement, lost earnings, permanent injuries, and loss of consortium. Subsequently, on April 27, 2006, Plaintiffs amended

---

in opposition to Standard Waste's motion, it expressly condition its right to recovery on Plaintiffs securing a judgment against J.B. Hunt. (Defs.' Resp. at 8) ("[I]n the event this Court determines that Plaintiffs may maintain a claim against Defendants, Defendants must be allowed to seek contribution from the source of this chemical, Standard Waste."). In light of the Court's Order and Opinion granting J.B. Hunt's own motion for summary judgment against Plaintiffs on the underlying negligence claim, the Court concludes that J.B. Hunt no longer possess a valid basis for seeking contribution from Standard Waste. Accordingly, insofar as it relates to J.B. Hunt's contribution claim, Standard Waste's motion is GRANTED.

their complaint to include Standard Waste as a defendant. In their most recent amended complaint, Plaintiffs allege that Standard Waste was negligent in "[i]mproperly receiving, loading, and/or inspecting the load of waste paper prior to placement into the trailer for transport" and "[f]ailing to adequately advise...Kuder of the existence of a chemical in the load of waste paper prior to loading and transport." (Third Am. Compl. ¶ 18 (a)-(b) at 5.)

On March 27, 2007, Standard Waste filed its motion for summary judgment, asserting that no genuine issues of material fact remain regarding Standard Waste's role in this action, and that Standard Waste is entitled to judgment as a matter of law on Plaintiffs' negligence claim. On April 4, 2007, Plaintiffs filed their response in opposition, arguing alternatively that the sodium PCP that caused their injuries was part of Standard Waste's paper and that, if the sodium PCP was from a prior load, Standard Waste knew or should have known of its existence in J.B. Hunt's trailer and should have taken steps to ensure its paper was not transported in the trailer. (Pls.' Resp. at 2.)

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The purpose of a motion for summary judgment is "to isolate and dispose of factually

3

unsupportable claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, the moving party "need not affirmatively negate the nonmovant's claim." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). Instead, the moving party bears an initial burden of demonstrating "an absence of evidence to support the nonmoving party's case." *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (quotations omitted); *see also Celotex Corp.*, 477 U.S. at 325. Once the moving party carries this initial burden, "the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a 'genuine issue of material fact.'" *Id.*; *see also Anderson*, 477 U.S. at 247-248. Thus, "[i]f a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *see also Celotex Corp.*, 477 U.S. at 322-23.

"To establish negligence liability for an injury, plaintiffs must prove that (1) defendants owed them a *duty to protect* them from injury, (2) defendants *breached that duty*, and (3) defendants' breach was a *proximate cause* of plaintiffs' injuries." *Iglehart v. Board of County Com'rs of Rogers County*, 60 P.3d 497, 502 (Okla. 2002). "[U]nder traditional principles of causation in negligence actions, plaintiff must present evidence that it is "more likely than not" that the harm suffered was caused by defendant's negligence." *Hardy v. Southwestern Bell Telephone Co.*, 910 P.2d 1024, 1027 (Okla. 1996). Nevertheless, "[w]hile absolute certainty is

4

not required, mere possibility of causation is insufficient." *Id*. Thus, "[w]hen the matter is one of pure speculation or conjecture or the probabilities evenly balanced...a party will not be permitted to recover from another whose acts, however wrongful, are not the proximate cause of the injury suffered." *Id*.

Moreover, a threshold question in any negligence action is "whether a defendant owes a plaintiff a duty of care." *Iglehart*, 60 P.3d at 502. Oklahoma courts "recognize the traditional common-law rule that whenever one person is by circumstances placed in such a position with regard to another, that, if he...did not exercise ordinary care and skill in his...own conduct, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." *Id*. The primary consideration in determining whether one party owes a duty of care to another is foreseeability. *Id*. As a general rule, "a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'" *Id*. (quoting *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 519 (Okla. 1990)). "Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct 'creates a generalized and foreseeable risk of harming others.'" *Id*. (quoting *Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1321 (Okla. 1996)). This is a question of law for the court. *Id*.

In its motion, Standard Waste asserts that Plaintiffs have failed to present any evidence to support their allegations that Standard Waste was the source of the sodium PCP found in J.B. Hunt's trailer. In support of this assertion, Standard Waste offers various undisputed[2] statements

---

[2] Pursuant to Local Civil Rule 56.1(c), "[a]ll material facts set forth in the statement of material facts of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of material facts of the opposing party." An

5

of material fact: (1) Standard Waste collects its paper from offices, universities, and businesses (Def.'s Mot. ¶ 6 at 4); (2) the rear-load truck used to collect this paper has never been used to transport hazardous chemicals or substances or products containing hazardous chemicals or substances (*id*. ¶ 7); (3) Standard Waste's paper handling process dislodges any dust, granules, or powders present in the paper (*id*. ¶ 8(A)-(D) at 4-5); (4) Standard Waste has never received any complaints from employees regarding foreign dust, granules, or powders in its paper (*id*. ¶ 10 at 9); (5) none of Standard Waste's employees suffered any ill effects from handling the paper at issue (*id*.); (6) Plaintiffs Ivan Dale Lamb, Gary Douglas Lowe, Gladys Yvonne Harris, Scott Eric Hobbs, Randy Lynn, and Lanny Dale Cartwright all testified either that Standard Waste was not the source of the chemical that injured them (*id*. ¶ 20 at 10) or that they had no evidence that it was (*id*. ¶ 24-28 at 11-13); and (6) Plaintiffs' expert C. Robert Thompson stated in his expert report that Standard Waste was probably not the source of the PCP in J.B. Hunt's trailer (*id*. ¶ 31 at 14). On the basis of this and other evidence, Standard Waste contends that it is entitled to summary judgment as a matter of law.

In their response, Plaintiffs contend that the evidence presented creates a genuine issue as to (1) whether Standard Waste's paper was the source of the PCP that allegedly injured Plaintiffs and (2) whether Plaintiffs otherwise breached their duty of care to Plaintiffs by failing to take

---

opposing party seeking to dispute the movant's statements of material fact must set forth "a concise statement of material facts to which the party asserts genuine issues of fact exist." *Id*. "Each fact shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed." *Id*. Plaintiffs dispute only one of Standard Waste's statements of material fact, which is not relevant here. Accordingly, all other statements of material fact offered by the J.B. Hunt Defendants are deemed admitted for the purposes of the instant motion.

adequate precautionary measures prior to loading their paper into the trailer. The Court addresses these issues separately below.

A. <u>**Whether Standard Waste Was the Source of the PCP in J.B. Hunt's Trailer**</u>

In their response, Plaintiffs first assert that "only two sources [of the sodium PCP in J.B. Hunt's trailer] exist: [1] a load of cargo hauled in the trailer prior to...[Standard Waste's] paper, or [2] [Standard Waste's] paper." (Pls.' Resp. at 5.) Although Plaintiffs acknowledge that the source of the PCP has not been determined, Plaintiffs argue that Standard Waste "remains a possible source when considering Defendant Hunt's proof that Hunt did not haul the chemical in any prior load." (*Id*.) Likewise, while recognizing that the three bales of Standard Waste's paper that were tested for PCP were found not to contain the substance, Plaintiffs speculate that the other 26 bales, which could not be tested because they had already been processed by Georgia Pacific before this action arose, "might have contained the chemical which injured the Plaintiffs." (*Id*.) On this limited factual basis, "Plaintiffs maintain that the source of the chemical is not only a material fact, but the main fact at issue in this case that precludes summary judgment" because "if the jury believes [that Standard Waste's paper] contained the chemical, [Plaintiffs have] satisfie[d] all of the elements of negligence under Oklahoma law." (*Id*. at 5-6.)

As noted above, however, the mere possibility of causation is insufficient under Oklahoma law to establish a valid claim for negligence. Instead, "[w]here one conclusion would be as sound as another, the evidence may then be said to leave the matter wholly within the realm of conjecture, and any conclusion would be the result of a common speculation." *Gillham v. Lake County Raceway*, 24 P.3d 858, 861-62 (Okla. 2001). Plaintiffs' proffered evidence

7

constitutes nothing more than speculation or conjecture. First, Plaintiffs' conclusion that the untested bales of Standard Waste's paper *might* have been the source of the PCP in J.B. Hunt's trailer is no more sound than the contrary conclusion that the same paper *might not* be the source of the chemical, especially in light of Plaintiffs' admission that the three bales actually tested did not contain PCP. Second, the deposition of Mark Whitehead, J.B. Hunt's Rule 30(b)(6) designee, which Plaintiffs rely on to support their contention that Standard Waste's paper rather than a prior load was the source of the PCP, is also speculative. In his deposition, Whitehead states that there was "nothing that [J.B. Hunt] hauled in the five or six previous loads prior to [Standard Waste's load] that gave [him] any pause" and that "if there had been something in the trailer that was as prevalent and easy to sweep up and pile up on the floor...[J.B. Hunt] would have already heard about [it] from Wal-Mart or Anheiser Busch or someone like that" because "Wal-Mart and Anheiser Busch will not load [J.B. Hunt's] trailers unless they're clean." (Pls.' Resp. Ex. 1 at 21.) In contrast, although admitting that he did not know whether Standard Waste's paper was the source of the PCP, Whitehead speculates that "if they pick it up curbside, then someone may have dropped a bag of fungicide in there...[o]r [if] they picked up waste paper at a manufacturing plant...[they] [m]ay have picked up empty bags of fungicide." (*Id.*) In the absence of any additional evidence corroborating either their own or Whitehead's speculations, the Court concludes that, even after drawing all reasonable inferences in their favor, Plaintiffs' have failed to come forward with sufficient evidence from which a reasonable jury could find that Standard Waste's paper was more likely than not the source of the PCP in J.B. Hunt's trailer. As such, Plaintiffs cannot support the proximate cause element of their negligence claim against Standard Waste under this theory of liability.

**B.      Whether Standard Waste Otherwise Breached a Duty Owed to Plaintiffs**

Plaintiffs also argue that "[e]ven if [Standard Waste's] paper is not determined to be the source of the chemical and, instead, the chemical was in the trailer from a prior load, then [Standard Waste] had a duty to not use the trailer for its cargo." (Pls.' Resp. at 6.) In support of this theory of Standard Waste's negligence, Plaintiffs assert that Standard Waste "should have had safety management controls in place and functioning prior to loading its paper into [the] trailer." (*Id.*) Plaintiffs argue that, had such procedures been in place, then the PCP present in J.B. Hunt's trailer "would more than likely been discovered due to its fertilizer-like appearance and the Plaintiffs would not have been injured, assuming [Standard Waste] would have used reasonable care after the chemical's discovery." (*Id.*)

In essence, Plaintiffs argue that (1) Standard Waste had a duty to implement undefined "safety management controls," (2) Standard Waste breached this duty by failing to implement these controls, and (3) Plaintiffs' injuries were proximately caused by Standard Waste's breach of duty. As the sole support of their conclusion that Standard Waste had a duty to adopt "safety management controls," Plaintiffs cite the report of Whitney Morgan, Plaintiffs' motor vehicle expert. In his report, Morgan refers to the hazardous materials regulations contained in subchapter C of Title 49 of the Code of Federal Regulations, which apply to "each person who offers a hazardous material for transportation in commerce." 49 C.F.R. § 171.1(b). Morgan opines that "[a]bsent a failure on the part of...the shipper to be knowledgeable of and properly comply with the applicable safety and hazardous materials regulations pertaining to the identification, packaging, marking, labeling, placarding, loading, securement, and transportation of hazardous cargo, it is unlikely to have a hazardous material, such as [s]odium [PCP], on the

9

floor of a cargo trailer." (Pls.' Resp. Ex. 2 at 6.) Although acknowledging that "[t]he hazardous materials column on the shipping document is not marked so as to indicate a hazardous material," Morgan asserts that "the hazardous materials 'Shippers Certification' is signed, indicating that a hazardous material has been offered for transportation." (*Id*. at 8.) On this basis, Morgan apparently concludes that Standard Waste is a hazardous materials shipper whose failure to adopt the "safety management procedures" set forth in the federal regulations proximately caused Plaintiffs' injuries.

As Standard Waste correctly points out, however, nowhere in the "Shippers Certification" identified by Morgan does the phrase "hazardous materials" appear. Instead, the "Shippers Certification" signed by Standard Waste merely certifies "that the above-named materials are properly classified, described, packaged, marked, and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation." (Def.'s Resp. Ex. A.) Indeed, from the face of the document, by signing the "Shippers Certification," Standard Waste did nothing more than affirm the accuracy of their labeling of the paper being sent to Georgia Pacific—including the omission of any indication that the paper contained hazardous materials.

Moreover, given the Court's previous determination that Plaintiffs have offered insufficient evidence from which a reasonable jury could conclude that Standard Waste's paper itself contained sodium PCP, Standard Waste could only be held subject to the hazardous materials regulations if it were offering for transport something other than its own paper. Nevertheless, as Standard Waste notes, Plaintiffs have not offered any evidence that Plaintiffs were even aware of the presence of any hazardous materials in the trailer, much less that

10

Plaintiffs intended to "offer a hazardous material for transport" within the meaning of 49 C.F.R. § 172.1(b) or any similarly worded provision.

Instead, the Court concludes Plaintiffs have failed to offer any reliable evidence establishing that Standard Waste was a hazardous materials shipper or otherwise had a duty to institute the "safety management controls" outlined in the federal regulations governing transportation of hazardous materials. As Standard Waste's failure to institute these controls constitutes the sole basis for Plaintiffs' assertion that Standard Waste "failed to use ordinary care to ensure the trailer was not loaded with its cargo in order to protect other persons from foreseeable injury" (Pls.' Resp. at 6), and in light of the Court's prior determination that Plaintiffs have come forward with insufficient evidence to prove that Standard Waste was the source of the sodium PCP in J.B. Hunt's trailer, the Court concludes that Standard Waste is entitled to judgment as a matter of law on Plaintiffs' negligence claim.

## **Conclusion**

For the reasons set forth above, Defendant Standard Waste System LTD.'s Brief in Support of Motion for Summary Judgment (Docket No. 194) is hereby GRANTED.

IT IS SO ORDERED this 2nd day of July, 2007.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma